UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

GOYA FOODS, INC.,

    Plaintiff,

v.                          Civil Action No. 2015-cv-200

GOYA HEALTH, LTD.,

    Defendant.

## COMPLAINT

Plaintiff, Goya Foods, Inc. (hereinafter, "Goya"), by its attorneys, Sandberg Phoenix & von Gontard, P.C., alleges on knowledge as to its own acts and otherwise on information and belief as follows:

### THE PARTIES

1. Goya is a corporation organized and existing under the laws of the State of Delaware having a principal place of business located at 100 Seaview Drive, Secaucus, New Jersey 07096. Goya is the owner of the trademarks at issue in this action.

2. Goya Health, Ltd. ("Defendant") is a limited corporation organized and existing under the laws of the State of Illinois having a principal place of business located at 202 S. Pershing, Energy, Illinois 62933.

3. Defendant: (a) is doing business in the State of Illinois; (b) has transacted business within the State of Illinois and this judicial district; and (c) has committed tortious acts within the

State of Illinois by offering for sale and selling infringing goods and/or services within the State of Illinois and this judicial district.

## NATURE OF THE ACTION

4. This is an action for trademark infringement, false designation of origin, dilution, cybersquatting, and unfair competition in violation of the laws of the United States and the State of Illinois. Goya seeks an injunction, damages and related relief.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. Goya's claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d) and related claims under the statutory and common law of the State of Illinois.

6. Venue is properly founded in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## GOYA'S FAMOUS TRADEMARKS

7. Goya, currently in its 78th year of operations, was founded in 1936 in New York City. Since then, Goya has grown from a business which made moderate sales of food and beverage products to corner stores and bodegas to become the most recognized Hispanic company in the United States. Goya has worldwide sales in excess of one (1) billion dollars annually.

8. Goya's goods and services have been widely advertised, offered for sale and sold throughout the United States under the GOYA mark and combination marks which include a GOYA element (collectively, the "Goya Trademarks"). The Goya Trademarks have at all times been owned exclusively by Goya.

9. Thanks to Goya's loyal consumer base and consistent brand expansion activities,

Goya's high-quality goods and services have become extremely robust. Many of Goya's high-quality goods can be found in traditional mom-and-pop bodegas, supermarkets, and "Big Box" mass merchant retailers such as Costco, Target and Walmart and other retail and wholesale outlets as well as over the Internet at www.goya.com.

10. In addition to its own advertising and promotional efforts, Goya and the Goya Trademarks have been the subject of thousands of articles in the media, including print, radio and television. Goya's enviable success has been celebrated and its history maintained within an exhibit at the National Museum of American History Archives Center since 2000.

11. Goya has been at the forefront in educating consumers regarding health, diet and nutrition. For example, Goya employs nutritionists and food scientists to expand its healthy product lines. Goya has also collaborated with the U.S. Department of Agriculture and First Lady Michelle Obama to support the MyPlate/MiPlato campaign, a national health initiative to help educate Americans on how to eat healthy.

12. Goya has produced and distributed over 336 million cans marked with the MyPlate logo and created more than 250,000 copies of two editions of the MyPlate cookbook, brochures, posters and lesson plans that have been distributed to consumers, supermarkets, teachers, school programs, and promotional events nationwide. In addition, Goya has reached millions by integrating healthy eating into its overall communication campaigns.

13. Goya sponsors and promotes numerous health and wellness programs and seminars on television, at convention centers, supermarkets, educational institutions and over the Internet via Goya's websites and through social media which are emblazoned with and feature the Goya Trademarks.

14. Goya has spent and continues to spend large sums of money advertising, marketing and promoting goods and services featuring the Goya Trademarks in interstate commerce. As a result of Goya's extensive advertising, marketing and promotion of goods and services featuring the Goya Trademarks and the widespread distribution and sale of goods and services featuring the Goya Trademarks, and the celebrity that goods and services featuring the Goya Trademarks have achieved, goods and services featuring the Goya Trademarks has been and is now recognized by the public and in the trade as originating from Goya.

15. Due to Goya's exclusive and extensive use and promotion of the Goya Trademarks, these marks have acquired enormous value and widespread recognition in the United States and in numerous countries throughout the world. The Goya Trademarks are well known to the consuming public and trade as identifying and distinguishing Goya exclusively and uniquely as the source of the high quality goods and services to which they are applied. The Goya Trademarks are both distinctive and famous.

16. The fame of the Goya Trademarks is well-recognized. Forbes Magazine has recognized Goya as one of America's fastest growing food companies. A.C. Nielsen reports which track category sales trends in foods and beverages frequently tracks Goya as #1 in several categories.

17. The Goya Trademarks are the subject of the following registrations on the Principal Register of the United States Patent and Trademark Office:

| Serial Number | Reg. Number | Mark | Class | Date of Registration |
|---|---|---|---|---|
| 85540065 | 4552177 | GOYA FIESTA | 029 | June 17, 2014 |

| Serial Number | Reg. Number | Mark | Class | Date of Registration |
|---|---|---|---|---|
| 85975977 | 4097241 | la cocina GOYA | 016 | February 7, 2012 |
| 85975976 | 4097240 | LA COCINA GOYA | 016 | February 7, 2012 |
| 85910118 | 4443624 | GOYA ARROZ Y FRIJOLES: ¡EL DUO DINAMICO NUTRICIONAL! | 029,030 | December 3, 2013 |
| 85819277 | 4522936 | GOYA | 031 | April 29, 2014 |
| 85716233 | 4397659 | GOYA | 005 | September 3, 2013 |
| 85668489 | 4283060 | GOYA | 002 | January 29, 2013 |
| 85668463 | 4283059 | SI ES GOYA TIENE QUE SER BUENO | 004 | January 29, 2013 |
| 85579052 | 4332818 | GOYA RICE AND BEANS: THE DYNAMIC FOOD DUO! | 029, 030 | May 7, 2013 |
| 85566098 | 4210054 | SI ES GOYA TIENE QUE SER BUENO | 032 | September 18, 2012 |
| 85525016 | 4440792 | GOYA FOR KIDS | 041 | November 26, 2013 |
| 85524938 | 4440791 | GOYA FOR KIDS | 025 | November 26, 2013 |
| 85524903 | 4440790 | GOYA FOR KIDS | 024 | November 26, 2013 |
| 85524863 | 4440789 | GOYA FOR KIDS | 018 | November 26, 2013 |
| 85524749 | 4205278 | EL MUNDO DE GOYA KID | 041, 044 | September 11, 2012 |
| 85304075 | 4128040 | GOYA | 004 | April 17, 2012 |
| 85140925 | 4547864 | SE É GOYA...TEM QUE SER BOM | 030 | June 10, 2014 |
| 85041442 | 4462955 | la cocina GOYA | 029, 030, 041 | January 7, 2014 |

5

6009228.1

| Serial Number | Reg. Number | Mark | Class | Date of Registration |
|---|---|---|---|---|
| 85004980 | 4462937 | LA COCINA GOYA | 029, 030, 041 | January 7, 2014 |
| 78701470 | 3210454 | GOYA | 033 | February 20, 2007* |
| 78199916 | 2874334 | GOYA | 024 | August 17, 2004* |
| 78199907 | 2866597 | GOYA | 018 | July 27, 2004* |
| 78451791 | 3001516 | ...IF IT IS GOYA IT HAS TO BE GOOD | 030 | September 27, 2005* |
| 78004128 | 2502127 | GOYA | 029 | October 30, 2001* |
| 77539854 | 3570054 | GOYA | 029, 030, 032 | February 3, 2009* |
| 77630588 | 3654004 | GOYA LATIN CAFÉ | 043 | July 14, 2009* |
| 77904649 | 3825092 | GOYA | 035 | July 27, 2010 |
| 77421878 | 3640777 | GOYA | 043 | June 16, 2009* |
| 76267384 | 2653723 | GOYA | 016 | November 26, 2002* |
| 75887828 | 2423267 | LA GRAN FAMILIA GOYA | 016 | January 23, 2001* |
| 75867700 | 2735075 | LA COCINA GOYA | 030 | July 8, 2003* |
| 75321229 | 2786688 | GOYA | 003 | November 25, 2003* |
| 75312800 | 2183842 | GOYA | 021 | August 25, 1998* |
| 74144498 | 1689199 | GOYA | 030 | May 26, 1992* |
| 73485909 | 1354559 | GOYA | 032 | August 13, 1985* |
| 73792351 | 1621463 | Sazón GOYA | 030 | November 6, 1990* |
| 72441391 | 0966178 | GOYA | 001, 005, 029, 030, | August 14, 1973* |

6

6009228.1

| Serial Number | Reg. Number | Mark | Class | Date of Registration |
|---|---|---|---|---|
| | | | 031, 032 | |
| 72160704 | 0764033 | GOYA | 029, 030 | January 28, 1964* |

18. True copies of these registrations are annexed as Exhibit "A," and made a part hereof. These registrations are valid and subsisting and are in full force and effect. These trademarks have at all times been owned exclusively by Goya and those registrations referenced above which contain an asterisk have achieved incontestable status pursuant to 15 U.S.C. §1065.

19. The goods and services that are distributed and sold under the Goya Trademarks include, but are not limited to, food, beverages, candles, fragrance products, cookbooks, audio recordings, bags, pens, clothing, calendars, calculators, entertainment services in the nature of cooking demonstrations and healthy lifestyle consultation, sponsorship of education and sporting events.

20. Since at least as early as 1999, and as part of the promotion of the Goya Trademarks, Goya has owned several domain names and/or websites featuring the Goya Trademarks to, among other things, relay information regarding GOYA products, to counsel GOYA customers regarding health and nutrition, and in connection with the offer for sale and sale of GOYA products (hereinafter the "Goya Domains" or "Goya Websites"). Examples of the Goya Domains include, www.goya.com, www.goyafoods.com, www.goyaadobo.com, www.sazongoya.com and www.goyabeans.com. The Goya Websites receive millions of visits each year.

## DEFENDANT'S WRONGFUL ACTIVITIES

21. Without the approval of Goya and after the Goya Trademarks had become famous, Defendant began disseminating written materials and advertising, promoting offering for sale and selling health, wellness and counseling services in interstate commerce under the "GOYA" trademark (hereinafter, the "Offending Mark" and "Offending Services"). The Offending Services are directed and targeted toward the same group of ultimate consumers that take advantage of Goya's products and services and/or are within Goya's ever expanding natural progression of goods and services and channels of trade.

22. As between Goya and Defendants, Goya has priority in the GOYA mark as a result of its federal trademark registrations and/or based upon its first use of the GOYA mark in interstate commerce. Accordingly, Defendant's adoption and use of the Offending Mark for the Offending Services infringes the Goya Trademarks as consumers encountering the Offending Mark are likely to be confused, deceived, or mistaken as to whether Defendant and/or its Offending Services under the Offending Mark originate from or are otherwise associated with, affiliated with, endorsed by, sponsored by, or connected to Goya and/or its goods and services, or vice versa.

23. The acts of Defendant in advertising, promoting offering for sale and selling in interstate commerce the Offending Services under the Offending mark (a) are likely to cause confusion and mistake among the consuming public that all such goods originate with Goya, (b) are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association of Defendant with Goya, (c) are likely to cause confusion and mistake among the consuming public that Defendant's goods are being offered to the consuming public with the sponsorship or approval of Goya, and/or (d) are likely to cause dilution of the distinctive quality

8

6009228.1

of the Goya Trademarks by blurring and tarnishment.

24. The aforementioned acts of Defendant are willful and intentional, in that Defendant either knew that its use of the Offending Marks were identical and/or confusingly similar to the Goya Trademarks, or willfully ignored such fact, and have done so in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of Defendant's Offending Services, and to gain the benefit of the enormous goodwill associated with the Goya Trademarks.

25. On or about February 20, 2014, Defendant caused to be registered the confusingly similar domain name/website, www.goyahealth.com (the "Offending Domain Name" or "Offending Website") with the domain registrar GoDaddy.com, LLC utilizing Defendant's address of 202 S. Pershing, Energy, Illinois 62933.

26. Defendant is responsible for and controls the Offending Website, including its registration and use.

27. The Offending Website features the Offending Mark and is being utilized to advertise, promote, offer for sale and sell Defendant's Offending Services under the Offending Mark in interstate commerce.

28. The Offending Domain was registered and is being used by Defendant with full knowledge of Goya's prior and exclusive rights in the Goya Trademarks, and with the intent to misappropriate Goya's fame and goodwill in the Goya Trademarks and to deceive consumers into believing that the Offending Website is connected with Goya.

29. Defendant's conduct is likely to cause mistake or to deceive consumers as to the source, origin or sponsorship of the Offending Website, and wrests from Goya the ability to control

the use of the GOYA name and the Goya Trademarks and the valuable goodwill therein.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
### (TRADEMARK INFRINGEMENT)

30. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 29 hereof as if fully set forth herein.

31. The aforementioned acts of Defendant constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Goya, for which Goya has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### (FALSE DESIGNATION OF ORIGIN)

33. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 32 hereof as if fully set forth herein.

34. The aforementioned acts of Defendant constitute the use of a false designation of origin and/or the making of false or misleading representations of fact in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

35. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Goya, for which Goya has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
### (TRADEMARK DILUTION)

36. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 35 hereof as if fully set forth herein.

37. The Goya Trademarks are strong and distinctive marks that have been in use for

many years and have achieved enormous and widespread public recognition, and are thus "famous" within the meaning of the Lanham Act.

38. Defendant use of the Offending Mark in commerce in connection with the offer for sale and sale of Defendant's goods and services, is likely to cause, and most likely has caused, confusion or mistake as to the affiliation, connection, or association between Defendant and Goya, or as to the origin, sponsorship, or approval of Defendant's goods and services by Goya.

39. The aforementioned acts of Defendant constitute trademark dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

40. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Goya, for which Goya has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
### (COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION)

41. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 40 hereof as if fully set forth herein.

42. The aforementioned acts of Defendant constitute trademark infringement and unfair competition in violation of the common law of the State of Illinois.

43. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Goya, for which Goya has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
### (DILUTION (765 ILCS 1036/1 et seq.))

44. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 43 hereof as if fully set forth herein.

45. The aforementioned acts of Defendant constitute trademark in violation of 765 ILCS

11

1036/1 et seq., and the common law of the State of Illinois.

46. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Goya, for which Goya has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
### (DECEPTIVE TRADE PRACTICES (815 ILCS 510/1 et seq.))

47. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 46 hereof as if fully set forth herein.

48. The aforementioned acts of Defendant constitute deceptive acts or trade practices in trade or commerce in violation of 815 ILCS 510/1 et seq. and the common law of the State of Illinois.

49. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Goya, for which Goya has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
### (VIOLATION OF ANTICYBERSQUATTING
### CONSUMER PROTECTION ACT (15 U.S.C. § 1125 (d))

50. Goya repeats and realleges each and every allegation set forth in paragraphs 1 through 49 hereof as if fully set forth herein.

51. The Goya Trademarks were distinctive at the time of the registration of the Offending Domain Name.

52. Without the authorization of Goya, Defendant has registered and is using the Offending Domain Name, which is confusingly similar to Goya's federally registered trademarks.

53. Upon information and belief, Defendant had full knowledge of Goya's prior rights in the Goya Trademarks when it secured registration of the Offending Domain Name.

6009228.1

54. Defendant has registered and is using the Offending Domain Name with the bad faith intent to profit from the Goya Trademarks. Upon information and belief, the Offending Domain Name has been used by Defendant with the bad faith intent to reap the benefit of the goodwill in the Goys Trademarks, to divert consumers to the Offending Website for commercial gain and to otherwise profit from unauthorized use of the Goya Trademarks.

55. The aforesaid acts and conduct constitute cybersquatting in violation of the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

56. The unauthorized registration and use of the Offending Domain Name is causing immediate and irreparable injury to Goya and to the goodwill and reputation of the Goya Trademarks, and will continue to damage Goya and the Goya Trademarks unless the Court enjoins such use and transfers registration of the Offending Domain Name to Goya.

WHEREFORE, Goya demands judgment as follows:

1. Preliminarily and permanently enjoining and restraining Defendant, its respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them, from:

    a. imitating, copying or making unauthorized use of the Goya Trademarks;

    b. manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service bearing any unauthorized reproduction, copy or colorable imitation of the Goya Trademarks;

c.    using any unauthorized colorable imitation of the Goya Trademarks, in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product or service in such manner as to relate or connect, or tend to relate or connect, such product or service in any way with Goya or to any goods or services sold, sponsored, approved by, or connected with Goya;

d.    using any unauthorized colorable imitation of the Goya Trademarks in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product or service which dilutes, tarnishes or blurs, or is likely to dilute the distinctive quality of the Goya Trademarks;

e.    selling, offering for sale, advertising, promoting or displaying any product or service in connection with the confusingly similar domain name www.goyahealth.com;

f.    engaging in any other activity constituting unfair competition with Goya, or constituting an infringement of any of the Goya Trademarks or of Goya's rights in, or their right to use or exploit such trademarks, or constituting dilution of the Goya Trademarks and the reputation and the goodwill associated with those trademarks;

g.    making any statement or representation whatsoever, with respect to the infringing goods or services in issue, that falsely designates the origin of the goods

or services as those of Goya, or that is false or misleading with respect to Goya; and

  h.  engaging in any other activity, including the effectuation of assignments or transfers of its interests in unauthorized colorable imitations of the Goya Trademarks or the, the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 1(a) through 1(h) above.

  2.  Directing that Defendant deliver for destruction all products, labels, tags, artwork, prints, signs, packages, dies, wrappers, receptacles and advertisements in its possession, custody or control bearing resemblance to the Goya Trademarks and/or any reproductions, copies or colorable imitations thereof.

  3.  Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product at issue in this case that has been offered for sale, sold or otherwise circulated or promoted by Defendant is authorized by Goya or is related to or associated in any way with Goya's products.

  4.  Directing the Commissioner of the United States Patent and Trademark Office to cancel any resulting registration issued from Serial Nos. 86250949 and 86250951 for the marks GOYA HEALTH and Design and GOYA HEALTH pursuant to 15 U.S.C. § 1119.

  5.  Directing Defendant to assign and/or transfer any and all GOYA domain names that it has registered, including the www.goyahealth.com domain name, to Goya.

6009228.1

6. Requiring Defendant to account and pay over to Goya all profits realized by their wrongful acts and directing that such profits be trebled, since Defendant's actions were willful.

7. Awarding Goya, at Goya's election, statutory damages pursuant to 15 U.S.C. § 1117(c) and (d).

8. Awarding Goya its costs and reasonable attorneys and investigatory fees and expenses, together with prejudgment interest.

9. Awarding Goya such other and further relief as the Court deems just and proper.

Dated: Carbondale, Illinois
February 24, 2015

Sandberg Phoenix & von Gontard P.C.

By: /s/A. Courtney Cox
A. Courtney Cox
2015 West Main, Suite 111
Carbondale, IL 62901
618-351-7200
618-351-7604 (Fax)
ccox@sandbergphoenix.com
*Attorneys for Plaintiff Goya Foods, Inc.*

6009228.1